Laramore, Judge,
dissenting:
I respectfully dissent for the following reasons:
The terms of the statute under which the taxes were collected from plaintiffs are clear and unambiguous. When Congress used the words “there shall be imposed upon the amount paid within the United States * * it is susceptible of only one meaning. In the absence of ambiguity, courts cannot go behind the act in order to give it another and different meaning. The interpretive ruling of the Commissioner, dated December 7,1942, wherein he stated:
The tax does not apply to the amount paid for the transportation of property * * * (c) when paid outside the United States, regardless of where the transportation occurs;[1]
was consistent with the regulations promulgated by the Commissioner in 1943. The pertinent portions of such regulations are as follows:
Eeg. 113, Sec. 143.11. Scope of Tasa. — Section 3475 (a) imposes a tax upon amounts paid within the United States after December 1,1942, to a person engaged in the business of transporting property for hire, for transportation, originating on or after such date, of property by rail, motor vehicle, water, or air from one point in the United States to another.
Eeg. 113, Sec. 143.13. Application of Tate. * * * The tax applies to the total amount paid within the United States for transportation of property from one point in the United States to another even though while enroute part of the transportation movement is through a foreign country.
The Commissioner’s regulations, adopted to conform with the 1950 amendment of the taxing statute, expressly recognized that the tax applies to amounts paid without the United States only on and after November 1,1950, the effective date of the 1950 amendment. These regulations provide as follows:
Scope of Tana. Section 3475 (a) imposes a tax upon (a) amounts paid within the United States after December 1,1942, for transportation originating on or after such date, of property by rail, motor vehicle, water, or air from one point in the United States to another, and
*515 (b) amounts paid without the United States, on or after November 1,1960, for transportation originating on or after such date; of property by rail, motor vehicle, water, or air from one point in the United States to another. The tax applies only to amounts paid to a person engaged in the business of transporting property for hire. [1951-1 Cum. Bull. 148,149.]
ij: * * * *
With respect to amounts paid within the United States, the tax applies only to amounts paid after December 1, 1942, for transportation which originated on or after such date. * * *
With respect to amounts paid without the United States, the tax applies to amounts paid on or after November 1, 1950, for transportation originating on or after that date.
The Supreme Court, in the case of Gould v. Gould, 245 U. S. 151, 153, said:
In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out.
In a more recent case of United States v. Olympic Radio and Television, Inc., decided May 23, 1955, the Supreme Court said: “* * * We can only take the Code as we find it and give it as great an internal symmetry and consistency as its words permit.”
Why Congress employed the words “paid within the United States,” we do not know. It may have been because Canada also had a similar tax until 1949 when it was repealed. While the Canadian tax was in effect, there could have been no tax avoidance reason for a shipper of merchandise within the United States to physically pay the transportation cost in Canada. Upon repeal of the Canadian tax, it became possible for shippers to avoid the United States excise tax by payment in Canada. Congress recognized this loophole and closed it shortly thereafter by amending this statute.
The physical delivery of the cashiers’ checks was clearly payment without the United States within the meaning of section 3475' (a) of the Internal Revenue Code.
I would permit plaintiffs to recover.
Madden, Judge, joins in the foregoing dissent.
*516 FINDINGS OF FACT
The court, having considered the facts as stipulated by the parties, and the briefs and argument of counsel, makes findings of fact as follows:
1. During the period from July 31, 1950, to October 30, 1950, inclusive, Kellogg Company incurred freight charges on shipments to it via The New York Central Railroad of raw materials and other goods purchased by Kellogg Company and used in the manufacture and distribution of its products. Such purchases were made f. o. b. the points of shipment, and the freight charges accordingly were an obligation of Kellogg Company. The freight charges together with the 3 percent tax imposed by section 3475 (a) of the Internal Revenue Code of 1939, as amended, § 620 (a), 56 Stat. 979, are set forth in the following schedule:
jDate — '1950 Freight Tax Total
July 31_ $3, 559. 45 $95. 53 $3, 654. 98
Aug. 1_ 1, 778. 23 53. 34 1, 831. 57
Aug. 2_ 3, 176. 88 78. 94 3, 255. 82
Aug. 3_ 4, 293. 47 128. 80 4, 422. 27
Aug. 4_ 11,556.93 341.32 11,898.25
Aug. 7_ 2. 52 .08 2. 60
Aug. 8_ 4, 342. 66 130. 26 4, 472. 92
Aug. 9_ 7, 895. 86 236. 88 8, 132. 74
Aug. 10_ 4, 307. 49 79. 03 4, 386. 52
Aug. 11_ 1, 794. 70 53. 84 1, 848. 54
Aug. 14_ 6,251.06 187.16 6,438.22
Aug. 15_ 5, 999. 27 171. 41 6, 170. 68
Aug. 16_ 2, 997. 69 89. 92 3, 087. 61
Aug. 17. 8, 318. 03 249. 58 8, 567. 61
Aug. 18_ 18, 714. 20 540. 11 19, 254.31
Aug. 21_ 6, 397. 68 193. 14 6, 590. 82
Aug. 22_ 2, 588. 33 77. 65 2, 665. 98
Aug. 23_ 5, 912. 50 177. 39 6, 089. 89
Aug. 24_ 6, 904. 49 207. 14 7, 111. 63
Aug. 25_ 2, 975. 17 83. 95 3, 059. 12
Aug. 28_ 7, 851. 10 235. 43 8, 086. 53
Aug. 29_ 11, 812. 76 354. 38 12, 167. 14
Aug. 30_ 5, 756. 76 146. 81 5, 903. 57
Aug. 31_ 9, 346. 11 263. 72 9, 609. 83
Sept. 1_ 5, 398. 91 161. 96 5, 560. 87
Sept. 5_ 3, 925. 41 117. 77 4, 043. 18
Sept. 6. 2,155.47 64.66 2,220.13
*517 Date — 1950 Freight Tax Total
Sept. 7__ $7, 706. 13 $231. 19 $7, 937. 32
Sept. 8— 5, 053. 37 151. 60 5, 204. 97
Sept. 11_ 4, 078. 84 122. 31 4, 201. 15
Sept. 12_ 23, 587. 64 707. 65 24, 295. 29
Sept. 13-7, 080. 41 200. 85 7, 281. 26
Sept. 15-2, 257. 61 62. 97 2, 320. 58
Sept. 18-1, 793. 83 53. 80 1, 847. 63
Sept. 19-1, 255. 82 37. 68 1, 293. 50
Sept. 20-5, 158. 31 135. 39 5, 293. 70
Sept. 21-1, 871. 16 56. 14 1, 927. 30
Sept. 22-1, 066. 30 27.35 1, 093. 65
Sept. 25-268. 94 8.07 277. 01
Sept. 26-1, 555. 76 32.54 1, 588. 30
Sept. 28-8,104. 59 243. 02 8, 347. 61
Sept. 29-1, 639. 11 49. 17 1, 688. 28
Oet. 2_ 1, 545. 80 46. 36 1, 592. 16
Oet. 3... 531. 31 15. 94 547. 25
Oct. 4_ 1, 874. 34 40. 18 1, 914. 52
Oct. 5-.. 1, 697. 01 50. 90 1, 747. 91
Oct. 6.-. 1, 260. 68 21. 56 1, 282. 24
Oct. 9... 5, 464. 28 158. 57 5, 622. 85
Oct. 10_. 917. 79 21. 19 938. 98
Oct. 11.. 994. 07 29. 82 1, 023. 89
Oct. 12.. 4, 938. 49 128. 50 5, 066. 99
Oct. 13.. 726. 76 6.85 733. 61
Oct. 16.. 1, 312. 56 39. 38 1, 351. 94
Oct. 17.. 1, 686. 67 29. 32 1, 715. 99
Oct. 18.. 2, 791. 82 83. 76 2, 875. 58
Oct. 20.. 3, 919. 18 98. 11 4, 017. 29
Oct. 23.. 5, 822. 98 174. 68 5, 997. 66
Oct. 24.. 14, 528. 92 435. 85 14, 964 77
Oct. 25_. 6, 780. 53 203. 39 6, 983. 92
Oct. 26.. 1, 567. 85 21. 29 1, 589.14
Oct. 27.. 2, 291. 29 64. 18 2, 355. 47
Total-289, 143. 28 8,309.76 297,453.04
2. Payment of the freight charges and tax totaling $3,654.98, set forth as the first item in the schedule incorporated in finding 1 hereof, was made by Kellogg Company in the following manner,'
a. The freight bills comprising the total charges set forth in the first item were listed in a letter addressed to The New York Central Kailroad, Windsor, Ontario, by the Kellogg Company, which read in pertinent part as follows:
*518 “We contend that the 3 percent excise tax should not be imposed or collected with respect to each and every of the foregoing bills, because payment thereof is being made by the undersigned without the United States, but under the press release of July 7,1950 (S-2389) the United States Commissioner of Internal Revenue states that such tax will apply to all shipments between two points in the United States, and your railroad refuses to accept payment of such freight bills in Canada unless the 3 percent excise tax is paid thereon.
“It is the intention of the undersigned to file appropriate claim for refund of the 3 percent tax paid upon the amount of the above bills.”
ib. A cashier’s check drawn by the Michigan National Bank, Battle Creek, Michigan, was obtained by Kellogg Company, payable to itself, in the amount of $3,654.98.
g. This check was indorsed at Kellogg Company’s office at Battle Creek, Michigan, as follows:
Pay to the order of The New York Central Railroad,
Kellogg CompaNy,
By: /s/ E. O. Oechaed,

Treasurer.

d. The letter in duplicate, the freight bills listed therein, and the indorsed check were transmitted by "United States mail to the Detroit, Michigan, office of Kellogg Sales Company, the wholly-owned sales subsidiary of Kellogg Company.
e. Upon arrival at the Detroit office of Kellogg Sales Company (usually the day following the mailing thereof), the duplicate letter, freight bills and indorsed check were transported by Kathryn H. Wautelet, the bearer designated in the letter, via automobile, to Windsor, Ontario, Canada, and there delivered by her to the agent of The New York Central Railroad.
/. The agent of said railroad acknowledged receipt of the indorsed cashier’s check at Windsor, Canada, in payment of the freight bills itemized in the accompanying letter, with the 3 percent excise tax thereon, by signing a receipt at the end of the duplicate copy of the letter and returning it to the bearer.
g. The receipted duplicate copy of the letter was mailed to Kellogg Company’s office at Battle Creek, Michigan, by the bearer, Kathryn H. Wautelet, or some person in the Detroit office of Kellogg Sales Company acting at her direction or request.
*519 3. During the period from July 31, 1950, to October 30, 1950, inclusive, Kellogg Sales Company incurred freight charges on shipments of its products via The New York Central Railroad. Such freight charges were prepaid by Kellogg Sales Company because the selling price of its merchandise is a delivered price to its customers. These charges together with the 3 percent tax imposed by section 3475 (a) of the Internal Revenue Code of 1939, as amended, § 620 (a), 56 Stat. 979, are set forth in the following schedule:

Bate

mo Freight Tax Total

July 31- $10,731.07 $307.71 $11,038.78
Aug. 1- 9, 123. 99 273. 71 9, 397. 70
Aug. 2- 9, 224. 81 276. 76 9, 501. 57
Aug. 3- 14,150. 30 424. 53 14, 574. 83
Aug. 4- 7, 740. 67 232. 23 7, 972. 90
Aug. 7- 10, 943. 98 319. 69 11, 263. 67
Aug. 8- 11, 671. 46 339. 66 12, 011. 12
Aug. 9_.- 9,040.04 269.97 9,310.01
Aug. 10- 9, 587. 93 287. 63 9, 875. 56
Aug. 11- 9, 611. 72 281. 33 9, 893. 05
Aug. 14- 7, 509. 60 225. 31 7, 734. 91
Aug. 15- 9, 852. 88 283. 15 10,136. 03
Aug. 16- 8, 891. 64 264 70 9,156. 34
Aug. 17- 17, 899. 60 537. 04 18, 436. 64
Aug. 18- 6, 660. 47 193. 12 6, 853. 59
Aug. 21- 6, 320. 20 174. 40 6, 494. 60
Aug. 22- 8, 440. 66 250. 80 8, 691. 46
Aug. 23- 4, 491. 13 134 74 4, 625. 87
Aug. 24- 9, 677. 26 271. 95 9, 949. 21
Aug. 25- 9, 427. 43 275. 59 9, 703. 02
Aug. 28- 8, 724. 02 241. 31 8, 965. 33
Aug. 29- 7,422.79 219.06 7,641.85
Aug. 30- 9, 256. 19 277. 66 9, 533. 85
Aug. 31- 6, 884. 24 203. 27 7, 087. 51
Sept. 1- 6, 995. 76 199. 81 7,195. 57
Sept. 5.... 7,644.99 229.35 7,874.34
Sept. 6__- 5, 777. 67 173. 30 5, 950. 97
Sept. 7- 6, 836. 66 197. 66 7, 034. 32
Sept. 8- 11, 225. 76 336. 72 11, 562. 48
Sept. 11- 8, 576. 79 236. 13 8, 812. 92
Sept. 12- 7, 864. 35 235. 95 8, 100. 30
Sept. 13- 3, 246. 86 97. 41 3, 344. 27
Sept. 14- 9, 502. 62 285. 07 9, 787. 69
Sept. 15- 6, 415. 86 188. 90 6, 604 76
Sept. 18- 6, 166. 93 181. 22 6. 348. 15

*520
Date 1950 Freight Tax Total

Sept. 19_ $7, 616. 50 $213. 26 $7, 829. 76
Sept. 20_ 5, 379.16 161. 37 5, 540. 53
Sept. 21_ 9, 693. 28 281. 63 9, 974. 91
Sept. 22_ 5, 864. 60 152. 52 6, 017. 12
Sept. 25_ 5, 924. 67 177. 74 6,102. 41
Sept. 26_ 4, 701. 55 141. 06 4, 842. 61
Sept. 27_ 7, 835. 79 235. 09 8, 070. 88
Sept. 28_ 16, 821. 51 465. 10 17, 286. 61
Sept. 29. 9, 816. 75 294. 48 10, 111. 23
Oct. 2_ 7, 997. 86 217. 29 8, 215. 15
Oct. 3_ 11,733.27 352.02 12,085.29
Oct. 4_ 11,695.90 332.54 12,028.44
Oct. 5..— 11,331.52 316.98 11,648.50
Oct. 6_ 12,436.66 357.70 12,794.36
Oct. 9__- 13,172.20 385.92 13,558.12
Oct. 10_ 10, 370. 37 301. 96 10, 672. 33
Oct. 11_ 8, 422. 51 243. 49 8, 666. 00
Oct. 12_ 11, 360. 96 337. 20 11, 698. 16
Oct. 13_ 13, 863. 32 412. 38 14, 275. 70
Oct. 16_ 7, 857. 69 222. 29 8, 079. 98
Oct. 17_ 11, 401. 48 332. 88 11, 734. 36
Oct. 18_ 9, 730. 52 291. 92 10, 022. 44
Oct. 19_ 11, 677. 12 337. 37 12, 014. 49
Oct. 20_ 7, 858. 64 229. 38 8, 088. 02
Oct. 23_ 6, 355. 65 177. 62 6, 533. 27
Oct. 24_ 8, 507. 34 255. 25 8, 762. 59
Oct. 25_ 8, 278. 41 239. 17 8, 517. 58
Oct. 26_ 8, 810. 99 230. 06 9, 041. 05
Oct. 27_ 7, 762. 75 229. 16 7, 991. 91
Oct. 30_ 8, 273. 24 244. 78 8, 518. 02
Total_ 586, 090. 54 17, 096. 45 603,186. 99
4. Payment of the freight charges and tax totaling $11,-038.78, set forth as the first item in the schedule incorporated in finding 3 hereof was made by Kellogg Sales Company in the following manner:
a. The freight bills comprising the total charges set forth in the first item were listed in a letter addressed to The New York Central Railroad, Windsor, Ontario. The letter contained the same statements as nave been quoted in finding 2a.
5. A cashier’s check drawn by the Michigan National Bank, Battle Creek, Michigan, was obtained by Kellogg Sales Company, payable to itself, in the amount of $11,038.78.
*521 o. The check was indorsed at the office of Kellogg Sales Company at Battle Creek, Michigan, as follows: Pay to the order of The New York Central Railroad,
Kellogg Sales Company,
By: /s/ E. O. Orchard,

Treasurer.

cl. The letter in duplicate, the freight bills listed therein, and the indorsed check were transmitted by United States mail to the sales office of Kellogg Sales Company in Detroit, Mich.
e. Upon arrival at the Detroit office of Kellogg Sales Company (usually the day following the mailing thereof) , the duplicate letter, freight bills and indorsed check were transported by Kathryn H. Wautelet, the bearer designated in the letter, via automobile, to Windsor, Ontario, Canada, and there delivered by her to the agent of The New York Central Railroad.
/. The agent of that railroad acknowledged receipt of the indorsed cashier’s check at Windsor, Canada, in payment of the freight bills itemized in the accompanying letter, with the 3 percent excise tax thereon, by signing a receipt at the end of the duplicate copy of the letter and returning it to the bearer.
g. The receipted duplicate copy of the letter was mailed to the office of Kellogg Sales Company at Battle Creek, Michigan, by the bearer, Kathryn H. Wautelet, or some person in the Detroit office of Kellogg Sales Company acting at her direction or request.
5. During the period from July 31, 1950, to October 30, 1950, inclusive, Kellogg Company incurred freight charges on shipments to it via the Grand Trunk Western Railroad Company of raw materials and other goods purchased by Kellogg Company and used in the manufacture and distribution of its products. Such purchases were made f. o. b. the points of shipment, and the freight charges accordingly were an obligation of Kellogg Company. These charges together with the 3 percent tax imposed by section 3475 (a) of the Internal Revenue Code of 1939, as amended, § 620 (a), 56 Stat. 979, are set forth in the following schedule:

Date

1950 Freight Tax Total

July 31- $4,443.48 $103.26 $4,546.74
Aug. 1- 1,787.94 30.57 1,818.51
Aug. 2- 4, 198. 54 95. 94 4, 294. 48
Aug. 3. 6,986.25 186.86 7,173.11

*522
Date 1960 Freight Tax Total

Aug. 4_ $2, 972. 60 $72. 23 $3, 044. 83
Aug. 8_ 2,082.88 51.57 2, 134. 45
Aug. 9_ 5, 355. 52 117. 96 5, 473. 48
Aug. 10_ 5, 389. 72 131. 62 5, 521. 34
Aug. 11_ 651. 76 13. 85 665. 61
Aug. 14_ 327. 68 3. 08 330. 76
Aug. 15_ 2,772. 65 83. 18 2, 855. 83
Aug. 16... 7, 827. 78 158. 61 7, 986. 39
Aug. 17_ 2,972.83 77. 76 3, 050. 59
Aug. 18_ 3, 184. 26 73. 92 3, 258. 18
Aug. 31_ 8, 380. 34 244. 95 8, 625. 29
Sept. 1__. 3, 636. 89 103. 77 3, 740. 66
Sept. 5.__ 11,011.86 319.04 11, 330. 90
Sept. 7_ 12,519. 00 341. 75 12, 860. 75
Sept. 8_ 9, 163. 46 264. 74 9, 428. 20
Sept. 11_ 1,952.29 53.22 2, 005. 51
Sept. 13_ 4, 326. 51 111. 35 4, 437. 86
Sept. 15_ 1,302.31 28.86 1, 331. 17
Sept. 19_ 520. 20 5. 23 525. 43
Sept. 20_ 2,728.25 69.79 2, 798. 04
Sept. 21. 1, 480. 50 44. 41 1, 524. 91
Sept. 22.. 3,975.48 83.74 4, 059. 22
Sept. 25.. 1,045.06 31.35 1, 076. 41
Sept. 26_ 581. 49 17. 44 598. 93
Sept. 27_ 3,916.37 93.41 4, 009. 78
Sept. 28. 2, 691. 54 80. 74 2, 772. 28
Sept. 29_ 844. 69 25. 35 870. 04
Oct. 2_ 1,321. 14 14.97 1, 336. 11
Oct. 3_ 1, 747. 06 27. 57 1, 774. 63
Oct. 4.._ 5,047.50 120.26 5,167. 76
Oct. 5_ 2, 143. 66 53. 87 2, 197. 53
Oct. 6... 746.63 22.40 769. 03
Oct. 9_ 751. 94 10. 30 762. 24
Oct. 10_ 1, 340. 33 40. 21 1, 380. 54
Oct. 11_ 3,420.72 97.46 3, 518. 18
Oct. 13_ 2, 566. 84 62. 56 2, 619. 40
Oct. 16_ 2, 666. 06 67. 33 2, 733. 39
Oct. 17_ 1, 783. 71 37. 40 1, 821. 11
Oct. 18_ 5, 765. 94 142. 14 5, 908. 08
Oct. 19_ 1, 455. 22 29. 27 1, 484. 49
Oct. 23_ 567.91 11.83 579. 74
Oct. 24_ 2,294. 11 63.40 2, 357. 51
Oct. 25_ 3,374.88 83.25 3, 458. 13
Oct. 26_ 1, 136. 65 23. 96 1, 160. 61
Oct. 27_ 2,592.78 71.20 2, 663. 98
Oct. 30. 2,262.98 60.55 2, 323. 53
Total_ 164, 006. 19 4, 159. 48 168, 165. 67
*523 6. Payment of the freight charges and tax totaling $4,546.74 set forth as the first item in the foregoing schedule was made by Kellogg Company in the following manner:
a. The freight bills comprising the total charges set forth as the first item were listed in a letter addressed to the Grand Trunk Western Railroad Company, Windsor, Ontario. The letter contained the same statements as have been quoted in finding 2a.
5. A cashier’s check drawn by the Michigan National Bank, Battle Creek, Michigan, was obtained by Kellogg Company, payable to itself, in the amount of $4,546.74.
<?. The check was indorsed at Kellogg Company’s office at Battle Creek, Michigan, as follows:
Pay to the order of the Grand Trunk Western Railroad Company,
Kellogg CompaNt,
By: /s/ E. O. Oeohaed,

Treasurer.

d. The letter in duplicate, the freight bills listed therein, and the endorsed check were transmitted by United States mail to the Detroit, Michigan, office of Kellogg Sales Company, the wholly-owned sales subsidiary of Kellogg Company.
e. Upon arrival at the Detroit office of Kellogg Sales Company (usually the day following the mailing thereof), the duplicate letter, freight bills and endorsed check were transported by Kathryn H. Wautelet, the bearer designated in the letter, via automobile, to Windsor, Ontario, Canada, and there delivered by her to the agent of the Grand Trunk Western Railroad Company.
/. The agent of that railroad acknowledged receipt of the endorsed cashier’s check at Windsor, Canada, in payment of the freight bills itemized in the letter, with the 3 percent excise tax thereon, by signing a receipt at the end of the duplicate copy of such letter and returning it to the bearer.
g. The receipted duplicate copy of the letter was mailed to Kellogg Company’s office at Battle Creek, Michigan, by the bearer, Kathryn H. Wautelet, or some person in the Detroit office of Kellogg Sales Company acting at her direction or request.
7. During the period from July 31, 1950, to October 30, 1950, inclusive, Kellogg Sales Company incurred freight charges on shipments of its products via the Grand Trunk *524 Western Railroad Company. Such freight charges were prepaid by Kellogg Sales Company because the selling price of its merchandise is a delivered price to its customers. These charges together with the 3 percent tax imposed by section 3475 (a) of the Internal Revenue Code of 1939, as amended, § 620 (a), 56 Stat. 979, are set forth in the following schedule:

Date

1950 Freight Tax Tota

July 31_ $6,946.26 $208.44 $7,154.70
Aug. 1_ 7, 887. 93 228. 74 8, 116. 67
Aug. 2_ 9, 319. 91 270. 89 9, 590. 80
Aug. 3_ 3, 709. 46 96. 45 3, 805. 91
Aug. 4_ 7, 841. 42 230. 97 8, 072. 39
Aug. 7_ 5, 882. 44 176. 49 6, 058. 93
Aug. 8_ 3, 095. 20 89. 35 3, 184. 55
Aug. 9_ 14, 466. 55 433. 68 14, 900. 23
Aug. 10_ 3, 024. 37 90. 75 3, 115. 12
Aug. 11.. 6, 850. 24 205. 51 7, 055. 75
Aug. 14_ 7, 609. 96 228. 29 7, 838. 25
Aug. 15_ 5, 526. 66 160. 48 5, 687. 14
Aug. 16_ 12, 244. 16 364. 68 12, 608. 84
Aug. 17_ 7, 237. 93 217. 18 7, 455. 11
Aug. 18_ 5, 433. 60 163. 01 5, 596. 61
Aug. 31_ 6, 080. 15 182. 42 6, 262. 57
Sept. 1_ 3, 723. 80 111. 72 3, 835. 52
Sept. 5_ 7, 610. 38 213. 50 7, 823. 88
Sept. 6_ 6, 065. 60 180. 86 6, 246. 46
Sept. 7_ 8, 533. 95 238. 16 8, 772. 11
Sept. 8_ 708. 95 21. 28 730. 23
Sept. 11_ 4, 582. 04 128. 29 4, 710. 33
Sept. 13_ 7, 654. 56 215. 91 7, 870. 47
Sept. 14_ 1, 655. 97 49. 55 1, 705. 52
Sept. 15_ 5, 684. 91 156. 81 5, 841. 72
Sept. 18. 5,151.03 154.53 5,305.50
Sept. 19_ 5,281.58 148.95 5,430.53
Sept. 20_ 8, 009. 10 234. 97 8, 244. 07
Sept. 21_ 1, 694. 00 50. 80 1, 744. 80
Sept. 22_ 3, 834. 48 113. 76 3, 948. 20
Sept. 25_ 4, 929. 41 147. 89 5, 077. 34
Sept. 26_ 6, 147. 31 175. 33 6, 322. 64
Sept. 27_ 6, 171. 72 185. 16 6, 356. 88
Sept. 28_ 2, 700. 85 81. 02 2, 781. 87
Sept. 29_ 2,955. 91 88. 67 3,044. 58
Oet. 2. 2, 112. 81 63. 40 2, 176. 21
Oct. 3. 1, 957. 92 58. 75 2, 016. 67
Oct. 4_ 1,863.60 55.92 1,919.52

*525
Date

I960 Freight Tax Total

Oct. 5- $1, 187. 58 $35. 64 $1, 223. 22
Oct. 6- 1, 959. 71 58. 79 2, 018. 50
Oct. 9.. 2,407.80 71.87 2,479.67
Oct. 10- 1, 654. 27 49. 64 1, 703. 91
Oct. 11- 5, 290. 16 158. 71 5, 448. 87
Oct. 13- 2, 210. 23 66. 32 2, 276. 55
Oct. 16...— 2,707.51 77.91 2,785.42
Oct. 18-. 2, 585. 57 77. 59 2, 663. 16
Oct. 17. 2, 207. 30 65. 87 2, 273. 17
Oct. 19... 2,266.37 67.99 2,334.36
Oct. 20_ 4, 656. 50 138. 51 4, 795. 01
Oct. 23_ 3, 334. 20 100. 03 3, 434. 23
Oct. 24- 3, 716. 78 111. 50 3, 828. 28
Oct. 25_ 3, 929. 76 117. 89 4, 047. 65
Oct. 26- 2, 099. 63 62. 96 2, 162. 59
Oct. 27- 1, 311. 24 39. 35 1, 350. 59
Oct. 30-.-. 5,262.57 143.78 5,406.35
Total_ 260, 973. 30 7, 666. 91 268, 640. 21
8. Payment of tbe freight charges and tax totaling $7,-154.70, set forth as the first item in the foregoing schedule was made by Kellogg Sales Company in the following manner:
a. The freight bills comprising the total charges set forth in the first item were listed in a letter addressed to the Grand Trunk Western Railroad Company in Windsor, Ontario. The letter contained the same statements that have been quoted in finding 2a.
b. A cashier’s check drawn by the Michigan National Bank, Battle Creek, Michigan, was obtained by Kellogg Sales Company, payable to itself, in the amount of $7,154.79.
c. This check was indorsed at the office of Kellogg Sales Company at Battle Creek, Michigan, as follows:
Pay to the order of the Grand Trunk Western Railroad Company,
Kellogg Sales Company,
By: /s/ E. O. ORCHARD,

Treasurer.

d. The letter in duplicate, the freight bills listed therein, and the indorsed check were transmitted by United States mail to the sales office of Kellogg Sales Company in Detroit, Michigan.
*526 e. Upon arrival at tlie Detroit office of Kellogg Sales Company (usually the day following the mailing thereof), the duplicate letter, freight bills and indorsed check were transported by Kathryn H. Wautelet, the bearer designated in the letter, via automobile, to Windsor, Canada, and there delivered by her to the agent of the Grand Trunk Western Railroad Company.
/. The agent of that railroad acknowledged receipt of the indorsed cashier’s check at Windsor, Canada, in payment of the freight bills itemized in the accompanying letter, with the 3 percent excise tax thereon, by signing a receipt at the end of the duplicate copy of the letter and returning it to the bearer.
g. The receipted duplicate copy of the letter was mailed to the office of Kellogg Sales Company at Battle Creek, Michigan, by the bearer, Kathryn H. Wautelet, or some person in the Detroit office of Kellogg Sales Company acting at her direction or request.
9. Kathryn H. Wautelet was employed by Kellogg Company on or about July 31,1950, expressly for the purpose of transporting and delivering on behalf of Kellogg Company (and its wholly owned sales subsidiary, Kellogg Sales Company) , to the agents of The New York Central Railroad and the Grand Trunk Western Railroad Company in Windsor, Canada, letters, freight bills and indorsed cashier’s checks as described in findings 2, 4, 6, and 8 hereof. Her employment for this special purpose was required because the task of transporting and delivering these items consumed a considerable amount of time, and there was no other available employee of Kellogg Company (or of its subsidiary, Kellogg Sales Company) who could be assigned to this job.
To and including October 31, 1950, Kathryn H. Wautelet was employed by Kellogg Company for the aforesaid purpose. She received a salary of $15 per week during this entire period. She reported to the Detroit, Michigan, office of Kellogg Sales Company as her place of employment.
From November 1, 1950, to December 31, 1950, Kellogg Company continued Miss Wautelet in its employ to perform minor clerical duties for it and its subsidiary, Kellogg Sales Company. Her salary was $15 per week and she worked at the Detroit, Michigan, office of Kellogg Sales Company. Her employment was terminated on December 31,1950.
*527 10. Payment of the freight charges and taxes constituting each and every of the items (in addition to the first item) of the schedule set forth in finding 1 hereof was effected in a manner identical to that described in finding 2 hereof including subparagraphs 2a to 2g. Payment of the freight charges and taxes constituting each and every of the items (in addition to the first item) of the schedule set forth in finding 3 hereof was effected in a maimer identical to that described in finding 4 hereof including subparagraphs 4a to 4g. Payment of the freight charges and taxes constituting each and every of the items (in addition to the first item) of the schedule set forth in finding 5 hereof was effected in a manner identical to that described in finding 6 hereof including subparagraphs 6a to 6g. Payment of the freight charges and taxes constituting each and every of the items (in addition to the first item) of the schedule set forth in finding 7 hereof was effected in a manner identical to that described in finding 8 hereof including subparagraphs 8a to 8g. The transportation to, and delivery in Windsor, Canada, of the duplicate letters, freight bills, and indorsed cashier’s checks used to pay such freight charges and taxes were accomplished in each intance by the same Kathryn H. Wautelet described in finding 9 hereof. Plaintiffs have in their possession the duplicate letter relating to each of the items comprising the schedules set forth in findings 1, 3, 5, and 7 hereof, and the accompanying customer’s copy of the cashier’s check used in payment of the freight charges and taxes itemized therein. Each such duplicate letter bears the signed receipt of the agent of The New York Central Eail-road or the agent of the Grand Trunk Western Bailroad Company acknowledging receipt of the indorsed cashier’s check at Windsor, Canada, in payment of the freight bills itemized in such letter, with the 3 percent excise tax thereon.
Í1. During the period from July 31, 1950, to October 30, 1950, inclusive, the main business office of Kellogg Company was situated at Battle Creek, Michigan. Kellogg Company did not maintain an office in Detroit, Michigan, or in Windsor, Canada.
*528 During the period from July 31,1950, to October 30,1950, inclusive, the main business office of Kellogg Sales Company was situated in Battle Creek, Michigan. For many years prior to and during that period Kellogg Sales Company regularly maintained a sales office at Detroit, Michigan, and continues to maintain such an office at the present date. Kellogg Sales Company did not maintain an office in Windsor, Canada, during the aforesaid period from July 31,1950, to October 30, 1950.
The payment of the freight charges set forth in these findings to agents of the respective railroads at Windsor, Canada, was not made for any business purpose other than to avoid payment of the tax imposed at that time by section 3475 (a) of the Internal Revenue Code of 1939, as amended.
12. Each of the shipments described in findings 1 and 5 hereof originated at some point in the continental United States and was destined for Kellogg Company’s plant at Battle Creek, Michigan.
Each of the shipments described in findings 3 and 7 hereof originated at Battle Creek, Michigan, and was destined for a customer of Kellogg Sales Company situated in some part of the continental United States.
13. No repayment of any of the taxes set forth in the schedules in findings 1, 3, 5, and 7 hereof, or any part of such taxes, ever has been made to the plaintiffs by either of the railroads collecting the same, nor have the plaintiffs otherwise recovered such taxes or any part thereof. The plaintiffs have not consented to the allowance of credit or refund of such taxes in whole, or in part, to either of said railroads.
14. No action on the claims set forth in the above entitled proceedings other than those mentioned in the petitions filed herein has been taken before the Congress of the United States or before any department of the Government.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law, that the plaintiffs are not entitled to recover, and the petition is therefore dismissed.

 Mim. 5447, December 7, 1942, 1942 — 2 Cumulative Bulletin 280.